## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARTON JONES,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:20-cv-1823** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **JOHN E. WETZEL,** *et al.*, | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

Presently before the Court is *pro se* Petitioner Barton Jones ("Petitioner")'s amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 13.) Respondents filed a response to the § 2254 petition on July 19, 2021. (Doc. Nos. 17, 18.) For the following reasons, Petitioner's § 2254 petition will be denied.

## I.    BACKGROUND

### A.    Procedural History

On August 31, 2017, following the conclusion of a jury trial in the Court of Common Pleas for Franklin County, Pennsylvania, Petitioner was convicted of third-degree murder, abuse of a corpse, false report to law enforcement authorities, tampering with physical evidence, and two (2) counts of criminal conspiracy. (Doc. No. 17-2.) Petitioner also pled guilty to one count of prohibited possession of a firearm. (*Id.*) The Superior Court of Pennsylvania set forth the background of the case as follows:

> This case arises from the shooting death of Lucas Coons. We take the
> following facts and procedural history from our independent review of
> the certified record. On the night of November 24, 2014, Coons told
> his friend, Tyler Larson, that he was going to purchase oxycodone pills
> using counterfeit money, and that he had done this once before. Larson
> unsuccessfully attempted to dissuade Coons from moving forward with
> this plan.
>
> Coons went to [Petitioner's] home to purchase the pills, and met with
> him in the basement. [Petitioner] confirmed that he had the drugs, and
> Coons handed him the counterfeit cash. The men argued about the
> counterfeit money, and [Petitioner] pulled a loaded gun from his front
> pocket. [Petitioner] shot Coons, causing him to sustain a contact wound
> to the center of his chest. [Petitioner] then asked his adult son, Patrick
> Holden, who lived with him and was home at the time, to help him
> move Coons' body and clean up the blood. They loaded Coons' body
> into Coons' car, and [Petitioner] drove away.
>
> [Petitioner] parked in a restaurant parking lot, and, using a disposable
> telephone, made a false report to 911 of men fighting. He abandoned
> the vehicle and walked to his girlfriend's home. He then returned to his
> house and disposed of Coons' shoes in a dumpster, tore up the
> counterfeit money and let it blow out of his car window, and drove up
> the interstate and threw his gun a river. The following morning,
> [Petitioner] told Holden to "say [Petitioner] was upstairs in the kitchen
> cooking that night[,]" if anyone asked, and indicated that Coons had
> "mess[ed] with [his] livelihood." [Petitioner] turned himself into
> authorities on December 4, 2014, after he learned that a warrant had
> been issued for his arrest.

(Doc. No. 17-6.) On October 4, 2017, the trial court sentenced Petitioner to an

aggregate term of not less than 342 and not more than 720 months' incarceration.

(*Id.*) Petitioner subsequently appealed to the Superior Court of Pennsylvania,

arguing that the evidence produced at trial was insufficient to support his third-

degree murder conviction. (*Id.*) On March 27, 2018, the Superior Court affirmed

Petitioner's judgment of sentence.  (*Id.*)  On August 15, 2018, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  (Doc. No. 17-7.)

On August 15, 2019, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition.  (Doc. No. 17-8.)  In his PCRA petition, Petitioner asserted that: (1) trial counsel was ineffective for failing to file a motion to have the charges dismissed for violation of Pennsylvania's speedy trial rule (Rule 600); and (2) counsel was ineffective for failing to object to prosecutorial misconduct when the prosecution allegedly lied about the presence of non-law enforcement witnesses and when Patrick Holden testified that he had made no promises or deals in exchange for his testimony.  (*Id.*)  Counsel was appointed to represent Petitioner, and on October 4, 2019, counsel filed a motion to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988), alleging that there was no merit to Petitioner's PCRA petition. (Doc. No. 17-9.)  Counsel identified seven (7) ineffective assistance of counsel issues that could be the basis of relief, namely, that counsel was ineffective for failing to: (1) file a Rule 600 motion; (2) object to a violation of the sequestration order; (3) object when Patrick Holden "lied about his deal"; (4) challenge a juror who worked for the Pennsylvania State Police; (5) challenge a juror who was related to a witness; (6) object to the prosecution's characterization of evidence during closing arguments; and (7) object to Petitioner being required to wear a prison

3

armband during trial.  (*Id.*)  On November 14, 2019, the PCRA court granted counsel's request to withdraw and informed Petitioner of its intent to dismiss his PCRA petition without a hearing.  (*Id.*)  Petitioner filed his objections to the PCRA court's notice on November 25, 2019.  (Doc. No. 17-10.)  On December 2, 2019, the PCRA court dismissed Petitioner's PCRA petition.  (Doc. No. 17-11.)

Petitioner subsequently appealed to the Superior Court and filed a brief that consisted only of various court documents.  (Doc. No. 17-12.)  On August 14, 2020, the Commonwealth filed a motion to quash Petitioner's appeal for failing to comply with Rule 2101 of the Pennsylvania Rules of Appellate Procedure.  (Doc. No. 18.)  On September 11, 2020, the Superior Court granted the Commonwealth's motion and quashed Petitioner's appeal pursuant to Rule 2101.  (Doc. No. 17-14.)

Petitioner initiated this matter on October 7, 2020 by filing a § 2254 petition that vaguely asserted that his Sixth and Fourteenth Amendment rights had been violated.  (Doc. No. 1.)  In an Order dated December 2, 2020, the Court directed Petitioner to file an amended § 2254 petition setting forth specific grounds for relief and specifying the facts and allegations supporting such grounds, and advised Petitioner that if he failed to do so, his original § 2254 petition (Doc. No. 1) was subject to dismissal for lack of specificity.  (Doc. No. 7.)  Petitioner subsequently received a sixty (60)-day extension of time to file an amended petition.  (Doc. Nos. 8, 9.)  On March 22, 2021, an individual representing herself as having power of

attorney for Petitioner filed an amended § 2254 petition.  (Doc. No. 10.)  In an Order dated March 24, 2021, the Court dismissed the amended petition filed on Petitioner's behalf and directed Petitioner to file an amended petition on his own behalf within thirty (30) days.  (Doc. No. 11.)  Petitioner filed his amended § 2254 petition on April 29, 2021.  (Doc. No. 13.)

### B.    Habeas Claims Presented

Petitioner raises the following claims for relief in his amended § 2254 petition:

1. Counsel was ineffective for allowing a violation of Petitioner's Sixth Amendment speedy trial rights without objecting to such violation; and

2. Prosecutorial misconduct occurred when the prosecution failed to correct allegedly false testimony given by a key witness.

(Doc. No. 13 at 5-6.)

## II.    STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state

criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## III.   DISCUSSION

### A.   Exhaustion and Procedural Default

The Court must first determine whether Petitioner's grounds for relief presented in his amended § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims. Respondents maintain that Petitioner's grounds for relief are

procedurally defaulted because the Superior Court quashed Petitioner's appeal from the PCRA court's dismissal of his PCRA petition.  (Doc. No. 17 at 9.)

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings.  *See id.* at 845.  In addition, a claim is exhausted when it has been "fairly presented" to the state court.  *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts."  *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted."  *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim."  *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).  Moreover, a habeas corpus petitioner has the burden of proving the

exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). The district court then analyzes the claims under the procedural default doctrine. *See id.* The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In *Cone v. Bell*, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief

in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Id.* at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)). The requirements of independence and adequacy are distinct. *See id.* A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *See Leyva*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and

"actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Schlup v. Delo*, 513 U.S. 298, 326 (1995). Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. *See id.* In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows.

First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *See id.* at 225 (citing *Hummard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused, and the Court may review the merits of the claim presented.  *See id.*

As noted *supra*, Petitioner appealed the PCRA court's dismissal of his PCRA petition to the Superior Court.   However, the Superior Court granted the Commonwealth's motion to quash the appeal for failure to file a proper brief.  *See* Pa. R. App. P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").   Rule 2101 is an independent and adequate state rule.  *See Price v. Garman*, No. 1:17-cv-1103, 2018 WL 3546558, at *5 (M.D. Pa. July 24, 2018) (citing *Betha v. Lane*, No. 17-3078, 2018 WL 3119868, at *3 (E.D. Pa. Apr. 4, 2018)); *Sistrunk v. McGinley*, No. 3:16-cv-815, 2017 WL 5589048, at *9 (M.D. Pa. Nov. 2, 2017), *Report and Recommendation adopted*, 2017

WL 5587111 (M.D. Pa. Nov. 20, 2017).  Thus, Petitioner has not exhausted his grounds for relief, and these grounds are procedurally defaulted because any second PCRA petition and subsequent appeal by Petitioner would be untimely.  *See* 42 Pa. Cons. Stat. Ann. § 9545(b) (providing that such a petition must be filed within one (1) year of the date on which the judgment becomes final).  Consequently, because these claims are procedurally defaulted, the Court can entertain the merits only if Petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice.

Petitioner advances no compelling argument to establish that cause for the default exists or that a fundamental miscarriage of justice will occur if the Court does not consider these arguments.  *See Coleman*, 501 U.S. at 750.  Rather, Petitioner suggests that because of the COVID-19 pandemic and his resulting inability to access the law library, he could not file a timely appeal to the Supreme Court of Pennsylvania.  (Doc. No. 13 at 8.)  Petitioner, however, does not contend that this prohibited him in any way from filing a proper brief with the Superior Court. Moreover, Petitioner provides no explanation as to why he did not file a proper supporting brief with the Superior Court.  Furthermore, in Pennsylvania, a PCRA petition need not appeal his PCRA petition to the Supreme Court of Pennsylvania; rather, a proper appeal to the Superior Court constitutes full exhaustion for purposes of § 2254.  *See Lambert*, 387 F.3d at 233-34; *Beatty v. Garman*, No. 3:19-cv-1802, 2020 WL 2616708, at *3 (M.D. Pa. May 22, 2020).

Petitioner's grounds for relief are, therefore, subject to dismissal as procedurally defaulted.  Although they are procedurally defaulted, Respondents also assert that they are subject to dismissal for being vague and unpersuasive.  (Doc. No. 17.)  The Court addresses Respondents' argument below.

### B.    Merits of Petitioner's Claims

As noted *supra*, Petitioner asserts that trial counsel was ineffective for failing to object to violations of his Sixth Amendment speedy trial rights and that prosecutorial misconduct occurred when the prosecution failed to correct false testimony given by a key witness.  (Doc. No. 13 at 5-6.)  Petitioner, however, fails to set forth facts suggesting how his speedy trial rights were violated.  Moreover, he fails to set forth facts identifying the key witness and what false testimony that key witness allegedly provided.  Such "[v]ague and conclusory allegations . . . may be disposed of without further investigation."  *See Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).  Nevertheless, the Court will address the merits of Petitioner's claims below.

### 1.    Ground One

As his first ground for relief, Petitioner asserts that trial counsel was ineffective for failing to object to an alleged violation of his Sixth Amendment speedy trial rights.  (Doc. No. 13 at 5.)  For claims of ineffective assistance of counsel raised in a habeas petition, the Court must consider the two components to

demonstrating a violation of the right to effective assistance of counsel as set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness."  *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id.* at 694.  The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.  *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir.

1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

As noted *supra*, the Superior Court quashed Petitioner's appeal from the dismissal of his PCRA petition. "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). The PCRA court considered Petitioner's ineffective assistance claim in its opinion granting counsel's motion to withdraw and in its opinion dismissing Petitioner's PCRA petition. The Court, therefore, will consider

15

those opinions when considering Petitioner's ineffective assistance claims.   With

respect to this ground for relief, the PCRA court stated:

> [Petitioner's] first contention is that he was not afforded a speedy trial under Pa. R. Crim. P. 600.  Thus, he argues trial counsel was ineffective for failing to seek a dismissal of the charges under that rule.
>
> Rule 600 establishes a mechanical deadline that requires the Commonwealth bring a case to trial within 365 days from the filing of the complaint.  Pa. R. Crim. P. 600(A)(2)(a).  This time only runs when the Commonwealth causes delay and fails to exercise due diligence.  All other time is excluded.  Pa. R. Crim. P. 600(C)(1).  Due diligence is fact and case specific, requiring the Commonwealth to be prepared, to keep records and notes, and be ready to try the case on time. *Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. Super. 2007).  Litigation of pre-trial motions that causes delay is excluded time, so long as the Commonwealth exercises due diligence in litigating them. *See Commonwealth v. Hill*, 736 A.2d 578, 588 (Pa. 1999).  These situations adjust the run-date by which the Commonwealth must be ready to present their case.  Once both sides have prepared their cases, the trial can be set at the "earliest possible date consistent with the court's business" without violating Rule 600, even if that date is after the adjusted run date. *Commonwealth v. Crowley*, 466 A.2d 1009, 1014 (Pa. 1983).
>
> The *Criminal Complaint* was filed on December 3, 2014.  However, [Petitioner] filed several continuances and pretrial motions which caused adjustments to the timeline.  On April 1, 2015, [Petitioner] requested a continuance of his arraignment to May 13, 2015.  On June 17, 2015, [Petitioner] requested a continuance to August 21, 2015.  On August 20, 2015 [Petitioner] requested another continuance to October 14, 2015.  On September 30, 2015, [Petitioner] filed a motion to sever two of his charges.  The resolution of that issue involved an appeal by the Commonwealth to the Superior Court which was not resolved until August 29, 2016.  [Petitioner's] trial could not begin until the severance issue had been resolved, the appeal period to the Supreme Court expired, and the record returned to this court.  *See* Pa. R.A.P. 2591(a).  The record was not remanded until October 11, 2016.  Nothing in the record indicates that the Commonwealth pursued the appeal with

anything less than due diligence.  Thus this period adjusted the Rule 600 timeline.  At that point, effectively 155 days had passed.

After resolution of the appeal the next available date for pre-trial conferences was November 3, 2016.  The case was delayed at that time for disclosure of [Petitioner's] expert report.  On March 9, 2017, pretrial matters concluded.  Both [Petitioner] and the Commonwealth were prepared for trial at that time.  However, the next available trial date on the Court's calendar sufficient for the case was not until August 29, 2017.  This was outside of the adjusted run date.  However, the failure to hold trial before the adjusted run date was not due to a failure of due diligence on the part of the Commonwealth.  The Commonwealth was ready within the adjusted run date.  The proceedings complied with Rule 600.  Thus a motion alleging a violation of that rule would have been meritless; trial counsel was not ineffective for failing to file such a motion.

(Doc. No. 17-9.)

The Sixth Amendment guarantees a defendant's right to a speedy trial.  When considering whether that right has been violated, courts must consider the following four (4) factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The Supreme Court has explained that "[t]he length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance."  *Id.*  Generally, delays of one (1) year or more may trigger analysis of the other *Barker* factors.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

Upon review of the record, the Court concurs with the PCRA court's thorough opinion regarding Petitioner's ineffective assistance of counsel claim. The delay of over one (1) year from Petitioner's arrest to trial does trigger analysis of the other *Barker* factors. As noted by the PCRA court in its analysis of Petitioner's Rule 600 claim, Petitioner requested several continuances, and the time for litigating pretrial motions, including the Commonwealth's appeal regarding Petitioner's motion to sever, was excluded. Nothing in the record suggests that Petitioner ever asked counsel to file a speedy trial request, either based upon Rule 600 or the Sixth Amendment. Furthermore, nothing in the record demonstrates that Petitioner's ability to present a defense was impaired in any way due to the delay, or that he suffered any other prejudice. Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

In sum, upon review of the record, the Court concludes that Petitioner has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, his first ground for relief will be dismissed.

2. **Ground Two**

As his second ground for relief, Petitioner asserts that prosecutorial misconduct occurred when the prosecution failed to correct false testimony given by a key witness. (Doc. No. 13 at 6.) Presumably, Petitioner is referring to testimony provided by Patrick Holden. With respect to this claim, the PCRA court stated:

> [Petitioner's] third issue is an accusation that Patrick Holden offered false testimony in regards [to] a purported agreement he made with the prosecution. Holden testified that no promises were made for his testimony. [Petitioner] believes this testimony to be false as the Commonwealth informed Holden that testimony offered in [Petitioner's] trial would be considered in resolving Holden's own charges.

> [Petitioner] has cited to *Commonwealth v. Strong*, 761 A.2d 1167 (Pa. 2000) in support of this contention. However, that case differs in two crucial respects. First, in *Strong* there was an "understanding" between the Commonwealth and an accomplice that favorable testimony would lead to leniency. *Id.* at 1174. While not a formal, binding plea agreement, the Commonwealth allowed the accomplice to plead guilty to fewer charges and he received a lesser sentence than he would have faced absent his testimony. *Id.* Secondly, the testimony of the accomplice and the defendant materially differed. *Id.* at 1175. It was only the accomplice's testimony that provided the crucial information necessary for the defendant's conviction. *Id.* In light of the importance of the testimony, the failure to reveal these negotiations to defense counsel and alert the jury to the agreement was a due process violation. *Id.* [at] 1174-75.

> The facts of *Strong* are clearly inapposite to the present case. Here there is no evidence the Commonwealth made any promise of leniency to Holden. The Commonwealth never charged Holden with the killing, only with helping clean up and dispose of evidence after the fact. Nothing indicates he was given a reduced sentence for his testimony; he was only told the Commonwealth would consider his testimony. Critically, [Petitioner's] own testimony does not materially differ from

Holden's testimony.  While some minor details differ, large portions of the testimony support a virtually identical series of events.  It is unclear what prejudice [Petitioner] suffered under these circumstances.  The case at bar does not establish the due process violation found in *Strong*.  Nothing indicates the truth determining process of [Petitioner's] trial was undermined.

Additionally, the record reflects that trial counsel requested a jury instruction on accomplice liability, and that such an instruction was given to the jury.  The jury was well aware that any discrepancies that did exist between Holden's testimony and [Petitioner's] may have been due to the charges Holden faced.

(Doc. No. 17-9) (internal citations to the record omitted). The PCRA court further stated:

Assuming *arguendo* that Holden testified falsely regarding a purported agreement with the Commonwealth, [Petitioner] cannot establish prejudice.  Holden's trial testimony was substantially and materially consistent with [Petitioner's] own testimony.  The very purpose of presenting evidence of a witness' agreement to testify for the opposing party is to impeach their credibility.  This case is not one where [Petitioner] denied any involvement in the death of the victim.  It is not a case where Holden alone implicated [Petitioner]; [Petitioner] himself admitted to shooting the victim, albeit unintentionally.  Pointedly, Holden did not and could not testify to what occurred outside his presence, *i.e.*, the events immediately preceding the shooting of the victim.  [Petitioner] provided those details to the jury himself.  Under these circumstances, impeaching Holden with his alleged agreement to testify would do nothing to change the outcome of the trial.  In other words, [Petitioner] cannot establish prejudice.

(Doc. No. 17-11) (internal citations to the record omitted).

The prosecution's knowing use of perjured testimony violates the Fourteenth Amendment's guarantee of due process.  *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  When false testimony is

presented, a conviction must be vacated "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). Thus, to show a constitutional violation, a petitioner must "show that (1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *Lambert*, 387 F.3d at 242.

Upon review of the record, the Court concludes that Petitioner has not conclusively shown any prosecutorial misconduct that violated his Fourteenth Amendment due process rights. Petitioner has not presented facts and evidence that Holden committed perjury and that any alleged false testimony affected the verdict. Petitioner has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, his second ground for relief will be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding initiated pursuant to 28 U.S.C. § 2254. A COA may issue only if

the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In the case at bar, jurists of reason would not find the disposition of this case debatable. Accordingly, the Court will not issue a COA in this case.

## V.    CONCLUSION

For the following reasons, Petitioner's amended § 2254 petition (Doc. No. 13) will be denied and a COA will not issue.  An appropriate Order follows.


<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: August 10, 2021